**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| GARY M. BLACKBURN, | ) | |
| | ) | CASE NO. 5:12-cv-02355 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff Gary M. Blackburn ("Blackburn") challenges the final decision of the Commissioner of Social Security Carolyn W. Colvin[1] ("Commissioner"), denying Blackburn's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be VACATED and the case REMANDED.

## I. Procedural History

On February 2, 2009 and February 17, 2009, Blackburn filed applications for POD, DIB, and SSI alleging a disability onset date of October 12, 2008. His application was denied both

[1] Defendant indicates that Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013 and that, pursuant to Fed. R. Civ. P. 25(d), Ms. Colvin should be substituted for Michael J. Astrue as the defendant in this action. (ECF No. 16 at 1.) The Plaintiff does not object.

initially and upon reconsideration.

On March 24, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Blackburn, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 10.) On April 4, 2011, the ALJ found Blackburn was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 22-23.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

***Personal and Vocational Evidence***

Age thirty-five (35) at the time of his administrative hearing, Blackburn is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). Blackburn has at least a high school education and past relevant work as a short order cook, fast food worker, and stock clerk. (Tr. 21-22.)

***Hearing Testimony***

At the hearing, Blackburn testified to the following:

- He believes he is disabled because he gets nervous around people and becomes "stressed out very easy." (Tr. 56.) He also claimed to be suicidal. His physical impairments include three herniated discs. (Tr. 57.)
- He last worked in September of 2008. He quit due to stress and back pain. (Tr. 58.)
- His medications include Vicodin, HCTZ, Ativan, Lamital, Geodon, Simcor, and Aspirin. (Tr. 59.)
- He previously had a cocaine problem and was imprisoned for attempting to distribute cocaine. (Tr. 59-60.)
- He did not attend a mandatory drug screening in 2006 because he had used marijuana. Consequently, he was returned to prison for ten months. (Tr. 60-61.)
- He becomes "very nervous around people and irritated." (Tr. 65.)
- He frequently has suicidal thoughts and was admitted to the hospital twice for suicidal ideation, seven days in 2009 and three days in 2010. (Tr. 66.)
- His concentration difficulties prevent him from finishing a half-hour television show. (Tr. 66-67.)
- He graduated from high school. He has a learning disability and attended learning disabled classes. He was held back twice. (Tr. 67-68.)

- He can read newspaper articles, but forgets everything he reads within minutes. His writing is illegible because his hand shakes badly due to "nerves." (Tr. 68.)

- His energy level is low. Two to three times per month, he stays in bed all day. He does not sleep well due to nightmares. He hears voices two to three times a week. (Tr. 68-70.)

- He has anger management issues and yells at his wife and step-daughter for no apparent reason. (Tr. 70.)

- He suffers from back pain and has received injections, which "work for about a day-and-a-half." (Tr. 70.) He experiences constant pain every day, which he rated at an average of six out of ten with ten being the worst. The pain radiates down to his legs and knees. Sometimes, he experiences tingling or numbness in his legs. He no longer is in pain management. (Tr. 71.)

- He had two surgeries on his left knee. It throbs badly when the weather changes and it occasionally "locks up" on him. His knee "gives out" on him once or twice a month. (Tr. 72.)

- He can stand/walk for a maximum of fifteen to twenty minutes at a time, and then the pain would cause him to sit down. Similarly he can sit for twenty minutes before needing to stand. (Tr. 72-73.)

- He tries to help with chores such as washing dishes and vacuuming, but cannot sustain it for more than a few minutes. (Tr. 73.)

The ALJ posed the following hypothetical to the VE:

> Please consider a hypothetical individual of the Claimant's age, education, work experience and the [RFC] to lift and/or carry up to 20 pounds occasionally, 10 pounds frequently; stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday; sit with normal breaks for a total of about six hours in an eight-hour workday; can occasionally climb ramps and stairs; no ladders, ropes or scaffolds; occasionally stoop, kneel, crouch and crawl; does not involve hazards such as hazardous machinery or unprotected heights; that also takes into account mental limitations, allowing the performance of simple and routine two to three-step work tasks in a setting with regular expectations; superficial interactions with others and no strict time or production pressures.

(Tr. 76.)

The VE testified that the hypothetical individual would be unable to perform any of Blackburn's past relevant work. (Tr. 76.) However, the VE identified the following jobs as examples that such an individual could perform: inspector and hand packager, electronics worker, and assembler of small products. (Tr. 77.)

The ALJ posed a second hypothetical to the VE:

> [P]lease consider a hypothetical individual of the Claimant's age, education, work experience and the [RFC] to lift and/or carry up to ten pounds occasionally, ten pounds frequently; stand and/or walk with normal breaks for a total of about two

> hours in an eight-hour workday; sit with normal breaks for a total of about six hours in an eight-hour workday.
>
> Can occasionally climb ramps and stairs; no ladders, ropes or scaffolds; occasionally stoop, kneel, crouch and crawl; does not involve hazards such as hazardous machinery or unprotected heights; that also takes into account mental limitations allowing the performance of simple and routine two to three-step work tasks in a setting with regular expectations; superficial interactions with others and no strict time or production pressures.

(Tr. 77-78.)

The VE identified the following jobs as examples that such an individual could perform: inspector of wooden products, patcher, and touchup screener. (Tr. 78.)

The ALJ posed a third hypothetical to the VE:

> [P]lease consider a hypothetical individual of the Claimant's age, education, work experience and the [RFC] to lift and/or carry one to five pounds frequently, up to ten pounds occasionally; stand and/or walk for a total of one hour in an eight-hour workday; sit for four hours in an eight-hour workday; must alternate positions every 15 minutes ....
>
> And further takes into account non-exertional limitations consisting of marked limitations, with ability to understand, carry out, and remember instructions; to respond appropriately to supervisors and co-workers; to respond to customary work pressures and to respond appropriately to changes in the work setting and, further, would likely be absent more than three times per month....

(Tr. 79.)

The VE testified that such an individual would be unemployable. (Tr. 79.)

## III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

---

[2] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404,

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Blackburn was insured on his alleged disability onset date, October 12, 2008, and remained insured through the date of the ALJ's decision, April 4, 2011. (Tr. 12.) Therefore, in order to be entitled to POD and DIB, Blackburn must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

## IV. Summary of Commissioner's Decision

The ALJ found Blackburn established a medically determinable, severe impairment, due to degenerative disc disease, bilateral knee disorder, bipolar disorder, and post-traumatic stress disorder; however, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Blackburn was found incapable of performing his past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Blackburn was not disabled.

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the

---

Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do

not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

***Treating Physicians***

Blackburn argues that the ALJ erred by failing to set forth good reasons for rejecting the opinions of his treating physicians, Elizabeth Hayford, M.D., and Preadeep Manudhane, M.D. (ECF No. 15 at 19-21.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[3]

---

[3] Pursuant to 20 C.F.R. §§ 404.1527(c) & 416.927(c), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with

Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).

On December 23, 2010, Dr. Hayford completed a medical source statement wherein she opined that Blackburn could stand/walk for a total of two hours total in an eight-hour day in one hour increments, sit for a total of two hours in an eight-hour day in fifteen minute increments, and would need to rest for a total of four hours in an eight-hour day.[4] (Tr. 1019-20.) Blackburn could carry up to five pounds frequently[5] and up to ten pounds occasionally, occasionally balance, and rarely/never stoop. (Tr. 1021.) Further, Dr. Hayford reported that Blackburn would be absent from work about twice per month due to his impairments and/or treatment. *Id*. Dr. Hayford also completed a pain questionnaire on the same date indicating Blackburn's severe depression, post-traumatic stress disorder ("PTSD"), and disc herniations were capable of producing pain, which would affect his ability to do basic work related activities. (Tr. 1022.) Dr. Hayford indicated that her findings were supported by Blackburn's suicide attempts and an MRI showing herniated discs. *Id*.

On February 4, 2011, Jaime Hain, CNP, completed an assessment of Blackburn's ability

---

the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

4 Although Dr. Hayford felt that Blackburn could stand/walk or sit for a total of four hours each in an eight-hour workday, reading her opinion as a whole, she opined that four hours of intermittent rest was needed. (Tr. 1019-21.)

5 Dr. Hayford's opinion appears internally inconsistent in this aspect, as it is unclear how Blackburn could lift/carry up to five pounds for six hours in an eight hour day while needing to rest for four hours.

to perform mental work-related activities.  (Tr. 1026-27.)  Ms. Hain drew a line through the first six domains indicating moderate limitations.  (Tr. 1026.)  Nonetheless, Ms. Hain drew a line indicating marked limitations in the following areas: understand, carry out and remember instructions; respond appropriately to supervision; respond appropriately to co-workers; respond appropriately to changes in the work setting; respond to customary work pressures; use good judgment; perform simple tasks; perform complex, repetitive, or varied tasks; and, behave in an emotionally appropriate manner.  (Tr. 1027.)  The form indicated that no psychological evaluation was obtained.  *Id*.  Ms. Hain also felt that Blackburn would be absent from work more than three times a month due to his impairments or treatment.  *Id*.  A signature that appears to be that of Dr. Manudhane is next to Nurse Practitioner Hain's.  *Id*.

The ALJ addressed the aforementioned opinions as follows: (1) "Dr. Hayford's opinion is given little weight.  Her findings are inconsistent with the medical evidence of record as well as the claimant's actual degree of limitation;" and, (2) "Dr. Manudhane's opinion is given little weight.  Although Dr. Manudhane treated the claimant, his findings are inconsistent with the medical evidence of record and the claimant's actual degree of limitation."[6]  (Tr. 19-20.)

The ALJ's conclusory and unexplained statement – that the opinions of Drs. Hayford and Mundhane were inconsistent with the medical evidence of record and the ALJ's finding as to Blackburn's actual degree of limitation – do not constitute "good reasons" for rejecting these opinions.  *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245-46 (6th Cir. 2007) (finding an ALJ failed to give "good reasons" for rejecting the limitations contained in a treating source's opinion where the ALJ merely stated, without explanation, that the evidence of record did not support the severity of said limitations); *accord Dunlap v. Comm'r of Soc. Sec.*, 2012 U.S. App. LEXIS 26483 (6th Cir. Dec. 27, 2012); *Bartolome v. Comm'r of Soc. Sec.*, 2011 WL 5920928 (W.D. Mich. Nov. 28, 2011) (noting that merely citing to "the evidence" and referring to the

---

[6] While the Court has its reservations whether the assessment contained in Exhibit 34F can be fairly attributed to Dr. Manudhane rather than Nurse Practitioner Hain, the ALJ plainly attributed the assessment to the former.  (Tr. 20.)  As such, the Court will conduct the review accordingly.

appropriate regulation was insufficient to satisfy the "good reasons" requirement); *Patterson v. Astrue*, 2010 WL 2232309 (N.D. Ohio June 2, 2010) (remanding where the "ALJ did not provide any rationale beyond his conclusory statement that [the treating physician's] opinion is inconsistent with the objective medical evidence and appears to be based solely on [claimant's] subjective performance."); *Fuston v. Comm'r of Soc. Sec.*, 2012 WL 1413097 (S.D. Ohio Apr. 23, 2012) (finding the ALJ deprived the court of meaningful review where the ALJ discarded a treating physician's opinion without identifying any contradictory evidence or explaining which findings were unsupported), *report and recommendation adopted*, 1:11CV224, 2012 WL 1831578 (S.D. Ohio May 18, 2012).

   The Commissioner asserts that no error occurred because the ALJ addressed the evidence at length.  (ECF No. 16 at 14.)  While the ALJ indeed performed a commendable job reciting a large portion of the medical evidence, his recitation of the evidence does not cure the failure to offer any meaningful analysis as to why the opinions of treating physicians were rejected.  While the ALJ concluded that the treating physician's opinions were inconsistent with the medical evidence, he does not offer any *explanation* for his conclusion.  Much of the physical evidence highlighted in the opinion seems capable of supporting serious functional limitations.  It is not altogether clear, however, as to how the evidence cited is inconsistent with Dr. Hayford's opinion that Blackburn could stand/walk two hours and sit for two hours in an eight-hour day, but require four of rest.  It also bears noting that most of the evidence cited predates Dr. Hayford's December 2010 opinion by over a year.  (Tr. 15-17.)  For example, a doctor's notation cited by the ALJ that Blackburn was permitted to return to work with no limitations was dated December 18, 2008 – over two years before Dr. Hayford's opinion.  (Tr. 608.)  The most proximate evidence cited by the ALJ is Blackburn's statement to Dr. Hayford in June 2010 that he exercises by walking his dog frequently.  (Tr. 17, *citing* Exh. 30F at 2, 4.)  There is no indication that this activity is inconsistent with the ability to stand/walk for only two hours. Simply put, this Court cannot conduct a meaningful review and conclude that good reasons have been set forth for rejecting a treating physician's opinion where an ALJ recites some of the pertinent evidence of record and  follows that recitation with an unexplained conclusion that said

opinion is inconsistent with the medical record. While such a procedure may be sufficient in cases where the medical evidence clearly contradicts and undermines a treating physician's opinion, this is not such a case.[7]

The Commissioner also asserts that the form reports provided by Drs. Hayford and Manudhane provide "little to no explanation for placing significant functional limitations on Plaintiff." (ECF No. 16 at 14.) Furthermore, the Commissioner cites portions of the medical record and Drs. Hayford and Manudhane's own treatment notes as conflicting with their respective opinions. These arguments highlight the inadequacy of the ALJ's opinion. Rather than focusing on what the ALJ actually said, the Commissioner cites portions of the medical record that potentially support the ALJ. (ECF No. 16 at 15-17.) However, the Commissioner cannot cure a deficient opinion by offering explanations never offered by the ALJ. As this Court has previously noted, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration." *See, e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635, 27-28 (N.D. Ohio, Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n.1, (2001)); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("we cannot uphold a decision by an administrative agency … if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *cf. Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1113 (6th Cir. 1986) (rejecting Defendant's *post hoc* rationale that obesity is *per se* remediable where there was no factual basis or findings of fact in the record to support such an argument).

The ALJ's opinion fails to set forth good reasons as to why the opinions of Dr. Manudhane and Dr. Hayford were given little weight. Moreover, this portion of the opinion is

---

[7] The only other reason offered for rejecting the opinions of Blackburn's treating physician's was that the limitations assessed were inconsistent with "the claimant's actual degree of limitation." (Tr. 19-20.) This explanation fails to constitute a "good reason" as it is the equivalent of an ALJ ascribing greater weight to his or her own non-expert opinion than to that of a treating source. Allowing an ALJ to reject a treating physician opinion simply because an ALJ disagrees with it would effectively eviscerate the treating physician rule.

so conclusory and devoid of explanation that it deprives this Court of the ability to conduct a meaningful review.[8]

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner should be VACATED and the case REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Report and Recommendation.

s/ Greg White
United States Magistrate Judge

Date: July 15, 2013

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

[8] As the Court otherwise recommends a remand, Blackburn's other assignment of error will not be addressed.